UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
WALTER MEYER,

               Plaintiff,

     -against-            MEMORANDUM AND DECISION
                              07-CV-2524 (JS) (ETB)

WILLIAM FLOYD UNION FREE
SCHOOL DISTRICT, and JANET GILMOR,

               Defendants.
-----------------------------------X
Appearances:
For Plaintiff:       Rick Ostrove, Esq.
                    Leeds, Morelli & Brown, P.C.
                    One Old Country Road, Suite 347
                    Carle Place, NY 11514

For Defendants:      Howard M. Miller, Esq.
                    Bond, Schoeneck & King, PLLC
                    1399 Franklin Avenue
                    Garden City, NY 11530

SEYBERT, District Judge:

       Plaintiff Walter Meyer commenced this action against the

William Floyd Union Free School District ("William Floyd") and

Janet Gilmor ("Gilmor") (collectively, "Defendants") on June 22,

2007.  Plaintiff's Complaint alleges causes of action pursuant to

42 U.S.C. § 1983 ("Section 1983") for a violation of the Fourteenth

Amendment, the Americans with Disabilities Act of 1990 ("ADA"), 42

U.S.C. § 12101, the Age Discrimination in Employment Act of 1967

("ADEA"), 29 U.S.C. § 621 et seq, Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000-e, et seq, and state law claims for

violations of the New York Executive Law § 290 et seq., (the "Human

Rights Law").  Additionally, Plaintiff's Complaint states that it

alleges "any other cause of action which can reasonably be inferred

from the facts set forth herein." (Pl.'s Complaint ("Compl.") ¶ 2).

Pending before this Court is the Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, Defendant's motion to dismiss is GRANTED.

<u>BACKGROUND</u>

The following facts are alleged by Plaintiff and regarded as true for the purpose of this motion. Plaintiff, a 63-year-old male, commenced employment with William Floyd as a custodian in September 1975. (Pl.'s Complaint ("Compl.") ¶¶ 9, 10.) In November 2004, Plaintiff sustained a work-related injury to his legs and back, which Plaintiff alleges resulted in disabilities that substantially limited one or more of Plaintiff's major life activities. (<u>Id.</u> ¶ 12.)

On December 10, 2004, Plaintiff spoke with Dr. Richard Hawkins, the Superintendent of William Floyd, and discussed Plaintiff's belief that male custodians should receive the same benefits as the female secretaries, and that the differing levels of benefits received by the custodians and secretaries constituted discrimination. (<u>Id.</u> ¶ 14.) Three days later, Plaintiff wrote to Dr. Hawkins and informed him that Plaintiff was considering retirement and wanted assurance that he would receive the same benefits as was provided to the female secretaries. (<u>Id.</u>)

On January 11, 2005, Plaintiff received worker's

compensation due to his injuries. (Id. ¶ 16.) In November 2005, Plaintiff spoke with Gilmor, the Assistant Superintendent of Personnel, about the possibility of Plaintiff's retirement, and requested that William Floyd provide Plaintiff with the same retirement benefits as the secretaries received. Plaintiff noted that the custodial workforce was mostly male, while the secretaries in the district were entirely female, and that the difference in retirement benefits constituted discrimination. (Id. ¶¶ 13, 14.)

On January 10, 2006, Plaintiff requested an extended sick leave ("catastrophic sick leave"), which Gilmore denied on January 13, 2006. (Id. ¶¶ 16, 17.) Plaintiff claims that William Floyd approved requests for catastrophic sick leave for similarly-situated younger employees and employees who had not opposed discriminatory practices. (Id. ¶ 17.)

On January 18, 2006, Gilmor informed Plaintiff that she would be recommending his termination to the school board based on Plaintiff's attendance record, his worker's compensation reports, and doctors' reports. (Id. ¶ 18.) In that same month, Plaintiff applied for social security disability, and on February 1, 2006, Plaintiff filed for retirement benefits with the New York State Employees Retirement System. Plaintiff alleges that he was entitled to payments from William Floyd for retirement benefits including: a) payment for vacation, sick, personal, and worker's compensation accruals; b) health insurance for him and his wife

through age 65; c) longevity payments; and, d) a lump sum payment of $57,600. (Id. ¶ 19.) However, Plaintiff did not receive the retirement benefits because on February 6, 2006, Gilmor informed the school board that Plaintiff was terminated and thus gave up his benefits. (Id. ¶¶ 20, 21.). Plaintiff alleges that Gilmor's motivation for her actions was based in part on Plaintiff's age, gender, disability, and/or opposition to discriminatory practices. Additionally, Plaintiff's Complaint, liberally read, appears to allege state law claims for breach of contract and intentional interference with contract.

DISCUSSION

I. Standard Of Review Under Rule 12(b)(6)

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, -- U.S. --, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The complaint must "raise [the] right to relief above the speculative level," Id. at 1965, precluding those claims that cannot be "nudged . . . across the line from conceivable to plausible," Id. at 1974. While the complaint "does not need detailed factual allegations," the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citations omitted).

The Second Circuit has construed Bell Atlantic to

4

establish "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). However, in applying this standard, the Court must still "accept all of Plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999), cert. denied, 531 U.S. 1069, 121 S. Ct. 756, 148 L. Ed. 2d 659 (2001).

Additionally, because a motion to dismiss challenges only the sufficiency of the complaint, "the Court must limit its analysis to the four corners of the complaint." Hunt v. Pritchard Indus., Inc., No. 07-CV-0747, 2007 U.S. Dist. LEXIS 47749, at *10 (S.D.N.Y. July 3, 2007) (internal quotation marks and citation omitted). Generally, "[c]onsideration of extraneous material in judging the sufficiency of the complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2)." Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2007). Nevertheless, the terms and effects of documents on which a plaintiff relies in drafting the complaint can also be considered when deciding a motion to dismiss. See id. at 153.

II.  <u>Leave To Amend</u>

Federal Rule Civil Procedure 15(a) generally governs the amendment of pleadings.  Rule 15(a) provides that

> [a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleadings only by leave of court or by written consent of the adverse party; and leave shall be freely given as justice so requires.

Fed. R. Civ. P. 15(a); <u>see also</u> <u>Lucente v. Int'l Bus. Machs. Corp.</u>, 310 F.3d 243, 259 (2d Cir. 2002); <u>Branum v. Clark</u>, 927 F.2d 698, 705 (2d Cir. 1991).  Leave to amend should be denied only because of undue delay, bad faith, futility, or prejudice to the non-moving party, and the decision to grant or deny a motion to amend rests within the sound discretion of the district court.  <u>Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.</u>, 404 F.3d 566, 603-04 (2d Cir. 2005); <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995).

III.  <u>Plaintiff's Claims</u>

A.  <u>Section 1983 Claim</u>

William Floyd moves to dismiss Plaintiff's Section 1983 claim on the grounds that Plaintiff fails to allege any official policy or custom that caused Plaintiff to suffer the denial of a constitutional right.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of

any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983.

Under Monell v. Department of Social Services, a municipality may not be held vicariously liable under Section 1983 for the actions of employees below the policymaking level. 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1977). Accordingly, to state a Section 1983 claim against a municipality based on the actions of employees below the policymaking level, Plaintiff must plead "'three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" Zahra v. Southold, 48 F.3d 674, 685 (2d Cir. 1995)(quoting Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)); see also Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1977). A municipality may not be held liable for a civil rights violation based upon the theory of respondeat superior. See Monell, 436 U.S. 658, 690-91; see also Perkins v. New York Ciy Dept. of Correction, 887 F. Supp. 92, 94 (S.D.N.Y. 1995).

While there is no heightened pleading requirement for stating an official policy or custom, a single alleged instance of misconduct is insufficient to display a municipal policy. See Dean

v. New York City Transit Authority, 297 F. Supp. 2d 549, 555 ("[U]nder the general pleading standard, 'a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'") (quoting DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998).

Plaintiff's Complaint merely alleges that William Floyd deprived him of constitutional rights in violation of Section 1983, and Defendants "intentionally committed, condoned or were deliberately indifferent to aforementioned violations of Plaintiff's constitutional rights." (Compl. ¶ 25.). Plaintiff reiterates this allegation in paragraph 25 of his Complaint, but does not allege any facts to give substance to this recitation of the pleading requirements under Section 1983. This bare-bones allegation fails to establish a municipal policy or custom which caused a violation of Plaintiff's constitutional rights.

Moreover, Plaintiff failed to plead other examples, outside that of his own experience, that the treatment he received was part of a larger custom or policy of discrimination practiced throughout William Floyd. In fact, the Complaint is completely devoid of any fact alleging that Plaintiff was injured as a result of William Floyd's policy, custom or practice or the actions of an employee with final policymaking authority. Consequently, Plaintiff's Section 1983 claim against William Floyd is DISMISSED for failure to state a claim. However, Plaintiff is granted an

opportunity to amend his Complaint to demonstrate, if he can, that Plaintiff's treatment was due to a municipal policy or custom.

B.   ADA Claim

Plaintiff alleges that he was terminated and denied catastrophic sick leave in part because of his disability, in violation of the Americans with Disabilities Act ("ADA"). The ADA prohibits an employer from discriminating against a disabled person who can perform the essential functions of her job. See 42 USCS §§ 12101 et seq.

To state a claim under the ADA, Plaintiff must allege that: (1) his employer is subject to the ADA, (2) he suffered a disability covered under the ADA, (3) he could perform the essential functions of his job, and (4) he suffered an adverse employment action as a result of his disability. See Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001). Here, Plaintiff fails to indicate that he could perform the essential functions of his job, with or without a reasonable accommodation, and fails to allege facts, other than bald assertions, indicating that he was denied catastrophic sick leave or terminated as a result of his disability. Because Plaintiff has failed to meet his initial burden in alleging a disability discrimination claim, Plaintiff's ADA claim is DISMISSED. Plaintiff is granted an opportunity to amend his Complaint to the extent that he can properly plead an ADA cause of action and allege that he suffered

9

adverse actions due to his disability.[1]

C.  ADEA Claim

The ADEA prohibits an employer from discriminating on the basis of age.  See 29 U.S.C. § 623(a)(1).  Other than stating that Plaintiff is 63-years old, Plaintiff has failed to allege any facts indicating that Defendants discriminated against him because of his age.  Plaintiff's bald assertions of age discrimination are inadequate, even under the liberal reading afforded Plaintiffs at this early state in the proceeding.  See Wilson v. Family Dollar Stores, No. 06-CV-639, 2007 U.S. Dist. LEXIS 23083, at * 29-30 (E.D.N.Y. Mar. 29, 2007) (dismissing age discrimination claim where "Plaintiff ha[d] done nothing more than simply state that she was discriminated against based on her age and . . . failed to state any of the events or incidents that she believe[d] form[ed] the basis of her age discrimination claim.").  Accordingly, Plaintiff's age discrimination claim is dismissed, with leave to amend.

D.  Title VII Disparate Treatment Claim

Plaintiff alleges that Defendants treated him differently than similarly-situated female employees.  Specifically, Plaintiff alleges that Defendants discriminated against him because William

---

[1] Plaintiff is warned that if the sole adverse action he complains of is his termination, his discrimination claims may be dismissed because Defendants have provided a legitimate, non-discriminatory reason for Plaintiff's termination, Civil Service Law § 71, which Plaintiff has not contested.  See Section III E, infra.

Floyd clerical workers, who were entirely female, received different retirement benefits than the custodial staff, who were mostly male.

The elements of a disparate treatment claim require Plaintiff to show "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008). To prevail on a disparate treatment claim, Plaintiff must allege that there were similarly situated employees who were treated less favorably than Plaintiff. See, e.g., Beauchat v. Mineta, 06-CV-5325, 2007 WL 4462387, at *2 (2d Cir. Dec. 19, 2007) (affirming district court's dismissal of plaintiff's Title VII claim where the plaintiff failed to show that "other individuals identified for purposes of comparison were similarly situated in all material respects.") (internal citations and quotations omitted); see also Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) ("When considering whether a plaintiff has raised an inference of discrimination by showing that she was subjected to disparate treatment, we have said that the plaintiff must show she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself.") (quoting Shumway v. UPS, 118 F.3d 60, 64 (2d Cir. 1997)).

Plaintiff argues that he was treated differently than allegedly similarly-situated clerical workers. According to Plaintiff, the female clerical workers received different benefits than the mostly-male custodians. However, the benefits Plaintiff refers to are derived from different collective bargaining agreements for clerical workers and for custodians.[2] Both parties clearly receive different benefits because such benefits are negotiated through different bargaining units. The separate collective bargaining agreements weigh against the notion that custodians and secretaries were similarly situated with respect to benefits. Plaintiff fails to indicate how the differences in the custodial and clerical bargaining agreements give rise to an inference of discrimination. If Plaintiff is not satisfied with his collective bargaining agreement, then Plaintiff should discuss this with his collective bargaining unit, rather than utilizing the differences in his contract to allege a discrimination claim.

Other than references to the different bargaining agreements, Plaintiff fails to allege any facts indicating that he

---

[2] It should be noted that there are numerous substantial differences between the collective bargaining agreements of the custodial staff and the clerical staff. For example, custodial and clerical staff salaries differ in annual percentage increases, the two staffs are subject to different methods of accumulating personal days, and custodians receive a higher amount of life insurance, as well as a clothing allowance that is not available to the clerical staff. See Miller Aff. Ex. A. The deviations between the two contracts are numerous, showing that the two groups are clearly not similarly situated, as they are governed by their respective collective bargaining agreements.

performed any functions similar to the clerical employees.  Simply stating that there are differences between the contracts of two groups of employees, who are not similarly situated, does not, without anything more, give rise to a plausible inference of discrimination.

Similarly, Plaintiff's allegation that William Floyd treated Plaintiff differently than Plaintiff's younger co-workers by denying Plaintiff catastrophic sick leave is also insufficient.  (Compl. ¶ 17.)  Plaintiff fails to state how he was similarly situated to the younger co-workers.  Again, simply stating that one was treated differently than 'similarly situated co-workers' is insufficient to withstand dismissal.

Accordingly, the Court DISMISSES Plaintiff's disparate treatment claims.  However, the Court notes the difficulty in pleading a disparate treatment claim, particularly "[b]ecause employers rarely leave a paper trail -- or "smoking gun" -- attesting to discriminatory treatment."  Hollander v. American Cyanamid Co., 895 F.2d 80, 85 (2d Cir. 1990).  Plaintiff is therefore granted leave to amend his disparate treatment claim.

E.    Plaintiff's Wrongful Termination Claim

To the extent that Plaintiff's vague Complaint alleges a wrongful termination under either Title VII, the ADA, or the ADEA, such a claim is DISMISSED.  Under Section 71 of the New York State Civil Service Law, an employer may terminate an employee disabled

13

in the course of employment after such employee has been absent for a one-year period.[3] See N.Y. Civ. Serv. § 71; see also Felix v. N.Y. City Transit Auth., 324 F.3d 102, 104 (2d Cir. N.Y. 2003) ("Civil Service Law § 71 . . . authorizes the termination of a civil service employee who has been unable to return to work for a year.").

An employer's decision to terminate an employee pursuant to Civil Service Law § 71 is a legitimate, non-discriminatory

_____

[3] The statute states, in pertinent part:

> Where an employee has been separated from the service by reason of a disability resulting from occupational injury or disease as defined in the workmen's compensation law, he or she shall be entitled to a leave of absence for at least one year, unless his or her disability is of such a nature as to permanently incapacitate him or her for the performance of the duties of his or her position. . . . Such employee may, within one year after the termination of such disability, make application to the civil service department or municipal commission having jurisdiction over the position last held by such employee for a medical examination to be conducted by a medical officer selected for that purpose by such department or commission. If, upon such medical examination, such medical officer shall certify that such person is physically and mentally fit to perform the duties of his or her former position, he or she shall be reinstated to his or her former position, if vacant, or to a vacancy in a similar position or a position in a lower grade in the same occupational field, or to a vacant position for which he or she was eligible for transfer.

reason for the employee's termination.  See Bresloff-Hernandez v. Horn, No. 05-CV-0384, 2007 U.S. Dist. LEXIS 71257, at *20 (S.D.N.Y. Sept. 21, 2007) ("No presumption of discrimination arises when an employer makes a decision explicitly provided for by the Civil Service Law."); Wright v. Office of Mental Health, N.Y. State Psychiatric Inst., 1993 U.S. Dist. LEXIS 9275 (S.D.N.Y. July 9, 1993) (holding that defendant provided a legitimate non-discriminatory reason for its action by presenting evidence that the plaintiff's termination was pursuant to Civil Service Law § 71).

Plaintiff sustained a work-related injury in November 2004 and on January 11, 2005 went on worker's compensation due to his injuries. (Compl. ¶¶ 12, 15.)  Plaintiff remained on worker's compensation for the next year, and in January 2006 applied for, and was granted, social security disability. (Compl. ¶ 19.)  It appears that Plaintiff was on leave due to a disability for more than one year and that Defendants terminated Plaintiff because of his absence pursuant to the Civil Service Law.  Inexplicably, Plaintiff, who is represented by an attorney and not proceeding pro se, does not respond whatsoever to Defendants' argument that Defendants terminated Plaintiff pursuant to the Civil Service Law, and in fact Plaintiff's pleadings and papers are completely void of any reference to that statute.  Because Defendants provide a legitimate, non-discriminatory reason for the termination, which

Plaintiff has failed to overcome, the Court GRANTS Defendants'
motion to dismiss the wrongful termination claims. Additionally,
the Court finds that amendment of the wrongful termination claims
would be futile because Defendants have shown that they terminated
Plaintiff pursuant to a lawful statute, which Plaintiff has not
contested.

      F.   <u>Retaliation Claim</u>

Plaintiff alleges that Defendants retaliated against him
because he complained about the disparate treatment between the
mostly-female clerical workers and the custodians. The elements of
a retaliation claim are "participation in protected activity known
to the defendant, an employment action disadvantaging the person
engaged in the protected activity, and a causal connection between
the protected activity and the adverse employment action." <u>Cruz v.
Coach Stores, Inc.</u>, 202 F.3d 560, 566 (2d Cir. 2000).

Protected activity refers to action taken to protest or
oppose statutorily prohibited discrimination. <u>See</u> <u>Wimmer v.
Suffolk County Police Dep't.</u>, 176 F.3d 125, 134-35 (2d Cir. 1999),
<u>cert. denied</u>, 528 U.S. 964, 120 S. Ct. 398, 145 L. Ed. 2d 310
(1999). Plaintiff states in his Complaint that he complained about
the alleged discriminatory disparate treatment to both Dr. Richard
Hawkins and to Defendant Janet Gilmor. (<u>Compl.</u> ¶¶ 13, 14.) The
Court has already found that the difference in the bargaining
agreements did not amount to discrimination, and expresses doubt

that Plaintiff's complaints about the different bargaining agreements constitutes protected activity. Nonetheless, even if the Court were to find that Plaintiff's complaints amounted to an oral opposition to discriminatory practices, Plaintiff's retaliation claim would still fail because Plaintiff fails to state how the allegedly adverse employment actions were causally connected to the protected activity. Plaintiff's initial complaint regarding the difference in benefits occurred when Plaintiff spoke with Dr. Hawkins in December 2004, and the second complaint was in November 2005, when Plaintiff discussed his retirement benefits with Gilmor. (Compl. ¶¶ 13, 14.) The substantial time gap between these complaints and Plaintiff's termination vitiates against a finding of retaliation. See Hollander v. American Cyanamid Co., 895 F.2d 80, 85 (2d Cir. 1990). If Plaintiff is claiming that the adverse employment action is his receipt of inadequate benefits, such a claim also fails because Plaintiff received his benefits pursuant to a collective bargaining agreement that was entered into before Plaintiff made his complaints, and therefore cannot be an action taken in retaliation for Plaintiff's protests of discriminatory treatment.

The Court grants Defendants' motion to dismiss, and grants Plaintiff leave to amend his retaliation Complaint.

G. Breach Of Contract And Tortious Interference With Contract Claims

Plaintiff's vague and inadequately pled Complaint may be

17

stating a claim for a breach of contract and tortious interference with contract.

Defendants move to dismiss the breach of contract claim on the grounds that Plaintiff's claim is time-barred because Section 217(2) of the New York Civil Practice Law and Rules, which governs actions brought against a union for a breach of the duty of fair representation, sets forth a four-month statute of limitations. Plaintiff argues that his claim is an action for a breach of contract, and not for a breach of the duty of fair representation, and therefore should be governed by the common law six-year limitations period. The Court agrees with Plaintiff that a six-year limitations period applies. Plaintiff's claims are against his employer only, and not against his union, and therefore are better classified as a breach of contract claim subject to the six-year limitations period contained in New York C.P.L.R. § 213[2]. <u>See Tricoles v. Jamaica Water Supply Co.</u>, 1993 U.S. Dist. LEXIS 21134 (E.D.N.Y. Aug. 30, 1993) (holding that plaintiff's breach of contract claim against his former employer and not against his union was governed by the six-year limitations period for contract actions set forth in New York C.P.L.R. § 213[2].)

The Court nonetheless DISMISSES Plaintiff's breach of contract claim and Plaintiff's tortious interference with contract claim because Plaintiff failed to file a notice of claim, as required by New York Education Law § 3813(1) ("Section 3813"). That

statute states, in pertinent part:

> No action or special proceeding, for any cause
> whatever . . . or claim against the district or
> any such school . . . shall be prosecuted or
> maintained against any school district, board
> of education, board of cooperative educational
> services, school . . . or any officer of a
> school district, board of education, board of
> cooperative educational services, or school .
> . . unless it shall appear by and as an
> allegation in the complaint or necessary moving
> papers that a written verified claim upon which
> such action or special proceeding is founded
> was presented to the governing body of said
> district or school within three months after
> the accrual of such claim, and that the officer
> or body having the power to adjust or pay said
> claim has neglected or refused to make an
> adjustment or payment thereof for thirty days
> after such presentment. In the case of an
> action or special proceeding for monies due
> arising out of contract, accrual of such claim
> shall be deemed to have occurred as of the date
> payment for the amount claimed was denied.

"[T]he purpose of section 3813 of the Education Law is to give a school district prompt notice of claims 'so that investigation may be made before it is too late for investigation to be efficient.'" Parochial Bus Systems, Inc. v. Board of Education, 60 N.Y.2d 539, 458 N.E.2d 1241, 1244, 470 N.Y.S.2d 564 (N.Y. 1983) (quoting Bd. of Educ. of Enlarged Ogdensburg City Sch. Dist. v. Wager Constr. Corp., 37 N.Y.2d 283, 333 N.E.2d 353, 356, 372 N.Y.S.2d 45 (N.Y. 1975). Here, Defendants argue, and Plaintiff does not deny, that Plaintiff failed to file a notice of claim prior to filing his action. However, Plaintiff urges the Court to find that his December 2004 and November 2005 complaints to Gilmor and

Dr. Hawkins were the equivalent of a notice of claim. The Court rejects this argument.

Liberally read,[4] the only allegations of a breach of contract or tortious interference with contract occurred on January 13, 2006, when Gilmor denied Plaintiff's catastrophic sick leave request, and on February 6, 2006, when Plaintiff was terminated. Plaintiff's conversations with Gilmor and Hawkins occurred prior to the alleged breach, and therefore cannot constitute notice under Section 3813 of Plaintiff's breach of contract or tortious interference with contract claims.

Plaintiff also argues that his complaint with the State Division of Human Rights ("SDHR"), filed on May 9, 2006, constituted notice of Plaintiff's claim. However, Plaintiff's complaint only refers to alleged discrimination, and does not mention a breach. While the SDHR complaint may have given Defendants notice of Plaintiff's discrimination claim, it could not have given Defendants notice of Plaintiff's breach of contract or

_____

[4] The Court notes that although it dismisses Plaintiff's breach of contract claim for failure to file a notice of claim, dismissal would also be warranted under Federal Rule of Civil Procedure 8, because it is entirely unclear exactly what Plaintiff is alleging. Plaintiff claims that he has not brought a breach of the duty of fair representation claim, yet states in his Complaint, "Such acts by the Union constituted a breach of its duty of fair representation." (Pl's Comp ¶ 22.). However, despite this statement, Plaintiff has not named the Union as a Defendant. Plaintiff's breach of contract claim is vague and ambiguous and fails to give Defendants proper notice of the substance of his claim.

tortious interference with contract claims.

Lastly, the conversations with Gilmor and Hawkins and the
SDHR complaint also fail to satisfy the notice requirements of
Section 3813 because neither "notice" was filed with the District's
"governing body", the District's Board of Education. Newman v.
Leroy Cent. Sch. Dist., No. 07-CV-6299, 2008 U.S. Dist. LEXIS 28581,
at *11 (W.D.N.Y. Apr. 8, 2008); see also Jackson v. Board of Educ.,
194 A.D.2d 901, 903 (App. Div. 3d Dep't 1993) ("[I]t is a condition
precedent to commencement of a special proceeding against a school
district that a notice of claim be presented to the "governing body"
of such school district within three months after the accrual of the
claim"). Here, Plaintiff's complaints were made to the
Superintendent and the Assistant Superintendent of Personnel,
neither of which are members of the District's governing body. See
Newman, 2008 U.S. Dist. LEXIS 28581 at *11 ("Education Law § 3813(1)
requires that the notice of claim must be filed with the District's
Board of Education, not with the Superintendent of Schools."); see
also Parochial Bus Systems, Inc. v. Board of Education, 458 N.E.2d
1241, 1245, 60 N.Y.2d 539, 547, 470 N.Y.S.2d 564, 568 (1983)
(holding that the "statutory requirements mandating notification to
the proper public body or official must be fulfilled."); Jackson,
194 A.D.2d at 903 ("In this case, petitioner served the notice of
claim solely on the Superintendent, who is not a member of the
governing body or the clerk of the governing body of respondent.").

21

Accordingly, Plaintiff's breach of contract and tortious interference with contract claims are DISMISSED. Because Plaintiff has failed to file a notice of claim, and the time for doing so has passed, as discussed in Section III I, _infra_, Plaintiff is DENIED leave to amend his breach of contract and tortious interference with contract claims.

H.  Human Rights Law Claims

Plaintiff's claims under the Human Rights Law are similarly barred because of Plaintiff's failure to file a timely notice of claim. Although Plaintiff filed a complaint with the SDHR, Plaintiff has not presented any evidence indicating that the complaint was served on the Board of Education. See Newman v. Leroy Cent. Sch. Dist., 2008 U.S. Dist. LEXIS 28581 (W.D.N.Y. Apr. 8, 2008) ("[E]ven if [Plaintiff's] EEOC charge could be considered a substitute for a notice of claim, this would not suffice because it was served on the wrong party."). Accordingly, the Court DISMISSES Plaintiff's Human Rights Law claims without leave to amend.

I.  Plaintiff's Application To File A Late Notice Of Claim

Plaintiff requests that the Court grant him an opportunity to file a late notice of claim. Section 3813 allows a court, in its discretion, to extend the time to serve a notice of claim, but cautions that the "extension shall not exceed the time limited for the commencement of an action by the claimant against any district or any such school." Educ. Law § 3813. Section 3813 sets forth a

one-year statute of limitations on any cause of action arising against a school district. Because the statute contains a one-year statute of limitations, the Court does not have the power to permit a late filing of a notice of claim if Plaintiff's claims arose more than one-year ago. See Ximines v. George Wingate High Sch., No. 05-CV-1214, 2006 U.S. Dist. LEXIS 50756, at *30 (E.D.N.Y. July 25, 2006) (holding that the court did not have the authority to extend plaintiff's time to file a notice of claim because more than a year had passed since the events that gave rise to Plaintiff's causes of action had taken place.); Newman v. Leroy Cent. Sch. Dist., No. 07-CV-6299, 2008 U.S. Dist. LEXIS 28581, at *19 (W.D.N.Y. Apr. 8, 2008) ("This statutory limitation of the Court's power to extend the time to serve notice of claim divests the court of authority to grant an extension beyond the expiration of the statute of limitations for the claim."); Santiago v. Newburgh Enlarged City School Dist., 434 F. Supp. 2d 193, 197 (S.D.N.Y. 2006).

In this case, the latest date upon which Plaintiff's claims could have accrued is February of 2006, when William Floyd terminated Plaintiff's employment. Plaintiff did not file a Complaint until June 22, 2007, well over a year after his claims arose. Accordingly, the Court lacks jurisdiction to grant Plaintiff permission to file a late notice of claim because the one-year limitations period has expired, and therefore DISMISSES Plaintiff's state law claims with prejudice.

<u>CONCLUSION</u>

For the reasons stated herein, the Defendants' motion to dismiss is GRANTED.  Plaintiff is granted leave to file an Amended Complaint on the Section 1983, ADA, ADEA, and Title VII claims within thirty days of the date of this Order.  Plaintiff's state law claims are dismissed with prejudice.

SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
      August  24 , 2008